EDWARDS, Judge.
Plaintiff, a former inmate of the Louisiana State Penitentiary, sues the State of Louisiana through the Department of Corrections, for damages allegedly sustained as a result of a beating inflicted by prison guards, and subsequent mistreatment and lack of medical attention. From the trial court’s ruling dismissing his suit, plaintiff now appeals.
Plaintiff specifies as error the failure of the trial court to find in his favor in the following particulars: (1) the State’s employees beat the plaintiff; (2) the State falsely accused, sentenced, and punished plaintiff; (3) the State’s employees sprayed plaintiff with mace without reason; and (4) the State failed to provide plaintiff with any medical care for his injuries.
On April 17, 1972 a “free man,” one of the guards at the State Penitentiary at Angola, was killed. Plaintiff, an inmate at that time, testified that, because of the killing, security was very tight that day. About 9:30 P.M. several hundred of the inmates, plaintiff included, were lined up by twos preparatory to moving into the dormitories. According to plaintiff, someone shouted an obscene remark about Bobby Oliveaux, one of the guards. Tommy Foster, another guard, was standing near plaintiff and pulled him out of line. Plaintiff protested that he hadn’t made the remark, but to no avail. He stated that Foster was joined almost immediately by Bobby Oliveaux and Junior Oliveaux, and Bobby Oliveaux began beating him about the head and back. He was then roughly escorted up the walk toward the gate to the control center, some 100 yards away. Plaintiff related that Bobby Oliveaux punched him several times behind the ear on the way up the walk and rammed his head into the gate upon arrival there. Plaintiff was then brought into the administrative lock down where, he testified, he was struck in the face several times by Bobby Oliveaux, breaking his nose. Bleeding and naked, he was then put in the “hole,” a small cell occupied at that time by five other prisoners. He testified that, despite his requests for medical attention, none was provided. Because of this remark which he maintained he was falsely accused of making, plaintiff stated that he served 18 days in the administrative lock down cell, during which time he was sprayed with mace once by some guards.
Plaintiff’s witnesses, all -but one of which were in the double line with plaintiff when the remark was passed, gave varying accounts of the events. While Dominque, Fulghum and Langworthy all insisted plaintiff was not the author of the remark, there was less agreement as to the subsequent events. Jay Assunto said that Bobby Oliveaux struck the plaintiff three or four times and saw blood around his eyes and forehead. Willie Dominque, who saw no blood, did testify that he saw the guards pushing the plaintiff against the gate when they reached the end of the walk. Roy Fulghum, who was standing facing the plaintiff in line, stated that Oliveaux “jugged” the plaintiff in the side with his night stick, but saw no other blows passed there or as the plaintiff was taken up the walk. Neither did he see the guards ram the plaintiff into the gate. Kenneth Langworthy, who was standing next to the plaintiff in line, never saw anyone hit him at any time. Anthony Costa, the fifth witness, testified that he was put into the administrative lock down cell about 12 hours after plaintiff. Costa said the plaintiff had some bruises on his side and back, but noticed no other injuries.
The defendant’s witnesses were in accord that no blows were inflicted on plaintiff nor was he rammed into the control center gate. Lt. Tommy Foster testified further that he was standing about three feet from the plaintiff, facing him, and saw and heard the plaintiff make the remark. Finally Bobby Oliveaux denied *511 ever striking plaintiff, either on the walk or in the lock down.
The trial court stated in written reasons that:
“While the Court accepts as true that plaintiff at some time received some injuries while he was an inmate at Angola that is all that it can say that plaintiff has proved by a preponderance of the evidence. The remainder of the evidence is so contradictory, so fraught with inconsistences and downright contradictions even among plaintiff’s witnesses that it cannot adopt the conclusion that plaintiff has borne his burden of proof.”
Plaintiff says he was viciously beaten by defendant’s agents, while they just as adamently deny it. The trial judge did not believe the plaintiff’s version, and plaintiff now asks us to reverse his ruling. We cannot.
The trial court’s finding of fact, based upon its evaluation of the credibility of the witnesses, is entitled to great weight. This is a limiting, yet salutary, principle of review. It is based as well on the proper allocation of trial and appellate functions as on the obvious advantage of the trial judge in evaluating live witnesses. Canter v. Koehring, 283 So.2d 716 (La.1973). Appellate review of facts found in the trial court must not be unbridled; on appeal a case is reviewed, not re-tried.
Plaintiff further contends that at least some of the testimony adduced in his favor, that relating to the denial of medical attention, was uncontested by the defendant and must therefore be accepted as true. While this is the general rule, it is not without exception. See Hollier v. Broussard, 220 So.2d 175 (La.App. 3rd Cir. 1969) and McIntire v. McBeath, 57 So.2d 707 (La.App.Orl. Cir. 1952). The trier of fact may take into consideration other circumstances besides opposing testimony in determining the witness’s credibility. If, in evaluating a witness’s credibility, the trier of fact finds him wanting, he may accord to that testimony whatever weight he deems appropriate.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.